[Cite as *In re Estate of Carte v. Bringardner*, 2023-Ohio-4286.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of the Estate of<br>James Carte, Deceased, | : | |
| | : | |
| Dan Miller, | : | No. 22AP-787 |
| | : | (Prob. No. 606694WC) |
| Plaintiff-Appellant, | : | |
| | : | (REGULAR CALENDAR) |
| v. | : | |
| Daniel Bringardner | : | |
| Individually and as Co-Executor of the<br>Estate of James Carte and Co-Trustee | : | |
| of the Amended and Restated James A.<br>Cart[e] Declaration of Trust et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on November 21, 2023

**On brief:** *DuPont and Blumenstiel, LLC*, and *Braden A. Blumenstiel*, for appellant. **Argued:** *Braden A. Blumenstiel*.

**On brief:** *Carlile Patchen & Murphy, LLP*, and *Bryan M. Pritikin* for appellees Daniel Bringardner and Harry B. Gate. **Argued:** *Bryan M. Pritikin*.

**On brief:** *Benson & Sesser, LLC*, and *Mark C. Melko*, for appellee Mildred Osborne. **Argued:** *Mark C. Melko*.

APPEAL from the Franklin County Court of Common Pleas
Probate Division

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Dan Miller, appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, which granted summary judgment in

favor of defendants-appellees, Daniel Bringardner, Harry B. Gate, and Mildred Osborne. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2}   James Carte was married to Virginia Miller until her death in late 2009. Carte and Virginia had two children, Carolyn Harris and Jean Miller.  Appellant is Jean's husband; they have two adult children. Carolyn also has two adult children.

{¶ 3}   On April 11, 2012, Carte executed an "Amended and Restated James A. Carte Declaration of Trust," which amended and restated an original trust agreement dated June 20, 2006 and subsequent amendments thereto dated January 13, 2010, June 9, 2010, and January 12, 2011. (Compl. at ¶ 3, Ex. 2.) Carte named as beneficiaries of the 2012 trust Carolyn, her two children, Jean's two children, his friend and caretaker Osborne, and three charitable organizations.  The 2012 amended trust included a no contest clause which specifically stated that Carte had intentionally made no provision for Jean and that if she or her children contested the validity of the trust or his will, provisions made in the trust agreement for Jean's children would lapse.  Carte named Bringardner, his attorney, and Gate, his friend, as co-trustees.

{¶ 4}   Also on April 11, 2012, Carte executed a will which revoked all former wills and codicils.  The will contained a pour-over provision directing the distribution of his property into the trust.  Carte appointed Carolyn, Bringardner, and Osborne as co-executors of his estate; Gate was appointed as successor co-executor.

{¶ 5}   Carte died on September 9, 2020. Administration of his probate estate was opened November 3, 2020 by Bringardner.  Upon Bringardner's application, the trial court admitted the 2012 will and appointed Bringardner as sole executor.  Bringardner filed the certificate of notice of probate of will on November 12, 2020.

{¶ 6}   On February 16, 2021, appellant filed a complaint seeking to invalidate the 2012 will and the 2012 trust, to set aside certain inter vivos transfers of assets, and for declaratory judgment. The complaint named as defendants Bringardner, Gate, Carolyn, and Osborne individually[1] and as co-executors of his estate, along with Jean, Jean's

---

[1] On June 4, 2021, appellant filed a Civ.R. 41(A)(1) voluntary dismissal, without prejudice, of Bringardner and Gate in their individual capacities only.

children, Carolyn's children, the three charitable organizations identified in the trust, and Ohio Attorney General Dave Yost.[2]

{¶ 7}   In the complaint, appellant alleged that he was a named beneficiary under a prior will and trust executed by Carte and Virginia in 2006 but was not a named beneficiary under the 2012 will and 2012 trust; accordingly, he had a direct pecuniary interest in Carte's estate which qualified him under R.C. 2107.71 as a "person interested" in the 2012 will and 2012 trust.  (Compl. at ¶ 7-9, 27.)  Appellant further alleged that Carte executed his 2012 will and 2012 trust at a time he was susceptible to undue influence by Osborne and/or lacked testamentary capacity to execute the documents.  Appellant also alleged that Carte made certain inter vivos transfers of assets at a time he was susceptible to undue influence by Osborne and/or lacked testamentary capacity to make the transfers. Appellant additionally alleged that the inter vivos transfers of assets constituted a conversion of Carte's assets, necessitating imposition of a constructive trust.  Finally, appellant sought a declaration that the 2012 will and 2012 trust were invalid.

{¶ 8}   Osborne answered appellant's complaint on April 21, 2021, asserting as an affirmative defense appellant's lack of standing to contest the 2012 will. Following two unopposed requests for an extension to move or plead in response to appellant's complaint, on May 28, 2021, Bringardner and Gate (together "appellees") filed a joint motion to dismiss the complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted.  Therein, appellees averred that Carte had executed a prior will in 2011 which was filed in the probate court on May 26, 2021,[3] and which did not provide for any distribution to appellant. Appellees asserted that appellant was not a "person interested" under R.C. 2107.71 because: (1) he was a non-blood relative not otherwise entitled to inherit through intestate succession, and (2) even if he were a named beneficiary in the 2006 will, the fact that he was not a named beneficiary in the 2011 will eliminated any standing he might otherwise have had under the 2006 will.   Thus, argued appellees, appellant lacked standing to contest the 2012 will.  Appellant filed a memorandum contra,

---

[2] Although not specifically alleged in the complaint, it appears that Yost was named as a defendant pursuant to R.C. 2107.73.

[3] Appellees noted the Administration No. 606694 associated with this filing and urged the probate court to take judicial notice of its docket.

to which appellees filed a reply. On September 1, 2021, the trial court entered an order denying the motion to dismiss.

{¶ 9}  Following an October 8, 2021 status conference, a magistrate of the probate court issued a scheduling order on October 12, 2021 setting forth a discovery cut-off date of April 29, 2022, and a dispositive motion filing deadline of June 1, 2022. In a separate order filed October 12, 2021, the magistrate ordered appellees to answer the complaint no later than November 5, 2021. Appellees filed separate answers on November 4, 2021; both asserted as an affirmative defense that appellant lacked standing to contest the 2012 will.[4]

{¶ 10}  On May 31, 2022, just over one month after the April 29, 2022 discovery cut-off deadline, appellant filed a combined motion (which, to simplify, we refer to as the "motion to compel") requesting that the trial court: (1) compel Bringardner to supplement his responses to appellant's first set of interrogatories and request for production of documents served July 13, 2021; (2) remove Bringardner as executor, appoint a new executor and order the new executor to sign authorizations allowing appellant to obtain the estate planning file of Carte's former attorney, David Humphrey, and Carte's medical and financial records from third parties; (3) extend all case deadlines, including the discovery cut-off date, by at least 180 days; and (4) award appellant the attorney fees incurred in preparing the motion. Appellant attached several exhibits to his motion to compel.

{¶ 11} In his memorandum in support of his motion to compel, appellant summarized the sequence of discovery efforts as we have noted in the following paragraphs. On February 24, 2021, he issued a subpoena to Humphrey seeking all estate planning documentation he prepared for Carte from January 2000 to the present. Humphrey failed to respond to the subpoena, but soon thereafter indicated, citing attorney client privilege, that he would not provide the subpoenaed documentation absent written authorization from Bringardner as executor of Carte's estate. Despite appellant's advisement that the statute governing attorney client privilege, R.C. 2317.02, was inapplicable under the circumstances of the case, Humphrey maintained his refusal to provide the subpoenaed documentation without authorization from Bringardner.

{¶ 12} In June 2021, appellant, Bringardner, and Humphrey exchanged communications pertaining to appellant's request that Bringardner sign an authorization

---

[4] The remaining named defendants, save for Jean, her children, and one of the charitable organizations, all filed answers.

permitting appellant to obtain Carte's estate file from Humphrey. Bringardner averred that he would not sign the authorization, and Humphrey reiterated that he would not provide the documentation without written authorization from Bringardner.

{¶ 13} On July 13, 2021, appellant served his first set of interrogatories and requests for production of documents on Bringardner. Later that same day, Bringardner notified appellant that he would not respond to the discovery requests prior to the trial court ruling on the motion to dismiss. On July 15, 2021, appellant again subpoenaed Humphrey's estate planning records. On July 27, 2021, Humphrey emailed appellant indicating he had received the subpoena but would not respond absent a written authorization from Bringardner. Later that day, Bringardner emailed appellant advising that Humphrey would not comply with the subpoena because he was without waiver to comply with the document request. Appellant responded by email, reiterating his assertion that under R.C. 2317.02, no attorney client privilege exists where claims of undue influence or lack of testamentary capacity are asserted; appellant further averred that he wanted to avoid needless motion practice unless absolutely necessary and would be willing to participate in a conference call with the court in order to obtain guidance on the issue.

{¶ 14} Following the trial court's September 1, 2021 denial of the motion to dismiss, Bringardner, on December 1, 2021, filed his responses to appellant's discovery requests.[5] On April 19, 2022, appellant wrote Bringardner requesting that he supplement his responses to select interrogatories and requests for production of documents and sign authorizations permitting appellant to obtain Humphrey's estate planning files and Carte's medical and financial records from third parties. In a letter dated April 29, 2022, Bringardner averred that appellant's failure to refine or address his objections to the discovery requests, coupled with the fact that appellant waited almost five months to send the letter, demonstrated a lack of good-faith effort to resolve the discovery issues. As to the authorization forms, Bringardner indicated that because discovery was closed and Humphrey was never properly served with a subpoena, the authorization issue was moot. Bringardner further stated that any attempt by appellant to subpoena Carte's medical and financial records would be met with objection as improperly and untimely issued.

---

[5] We note that appellant's motion to compel did not set forth, or include as an exhibit, Bringardner's initial responses to appellant's discovery requests.

{¶ 15} Appellant's motion to compel requested that the trial court order Bringardner to file supplemental responses to select interrogatories (Nos. 5, 6, 7, and 10) and requests for production of documents (Nos. 3, 6, 13, 15, 18, 19, 21, 22, 23, 24, and 25). Those interrogatories requested information pertaining to Carte's financial holdings in the last ten years of his life, including identification of bank, IRA, brokerage accounts, pensions, insurance policies, savings bonds, and transfer on death deeds, names and addresses of financial institutions in which Carte held assets or had accounts, account numbers and balances for all bank accounts, as well as identification of Carte's real estate holdings during the five years preceding his death. The documents requested included all of Bringardner's files pertaining to any legal work performed for Carte during Carte's lifetime; copies of Carte's financial holdings from January 1, 2004 to the present held by Bringardner; written statements and/or documentation regarding any person Bringardner intended to call as a fact or lay witness; Carte's personal or private documents and computer files held by Bringardner; Bringardner's personal or private files related to Carte that were generated before the filing of appellant's complaint; Carte's personal check ledgers for the ten years preceding his death; and copies of accounting information, notes, phone logs, and written communications generated as a result of legal work performed by Bringardner for Carte from January 2004 to the present.

{¶ 16} On June 1, 2022, the last day for filing dispositive motions, appellees filed a joint motion for summary judgment; Osborne followed later that day with her own motion for summary judgment. Both motions asserted that appellant lacked standing to contest the 2012 will and 2012 trust. Specifically, both motions argued that appellant was not a "person interested" under the 2012 will and 2012 trust and had no pecuniary interest in Carte's estate because he is not a blood relative of Carte and is not a beneficiary under the 2012 will and 2012 trust. Both motions further argued that even if appellant was a named beneficiary under Carte's 2006 will and 2006 trust, Carte eliminated him as a beneficiary through two subsequent codicils to his will and two subsequent amendments to the trust, executed on January 10 and June 9, 2010, respectively, and through a will executed on January 12, 2011 which revoked all prior wills. Both motions further argued that even if appellant had standing to challenge the 2012 will and 2012 trust, no genuine issue of material fact existed establishing Carte was unduly influenced or lacked testamentary capacity in the execution of those documents.

{¶ 17} Appellees attached as exhibits to their motion for summary judgment excerpts from the deposition of appellant taken May 16 2022;[6] a copy of Carte's first will and trust, executed June 20, 2006; a copy of the first codicil to the will and first amendment to the trust, executed January 13, 2010; a copy of the second codicil to the will and second amendment to the trust, executed June 9, 2010; a copy of the will and trust executed January 12, 2011 and a copy of the 2012 will and 2012 trust. Appellees also attached Bringardner's affidavit attesting he served as Carte's attorney from late 2010 through his passing in 2020, drafted Carte's 2011 will and 2011 amended trust, Carte's 2012 will and 2012 amended trust, and that the documents attached to the motion for summary judgment as exhibit Nos. 5 and 6 were true and accurate copies of those documents.

{¶ 18} Thereafter, on June 13, 2022, Bringardner filed a memorandum contra appellant's motion to compel, arguing, inter alia, that such was time-barred pursuant to probate court local rules, as it was filed after the April 29, 2022 discovery deadline. He further argued that the motion did not include the certification required by Civ.R. 37(A)(1) that appellant had in good faith conferred or attempted to confer with him in an effort to obtain the requested discovery without court action. Bringardner also challenged as improper appellant's requests to have him removed as executor, to extend the discovery deadline, and to order him to pay appellant's attorney fees.

{¶ 19} Bringardner attached three exhibits to his memorandum contra. The first was a copy of his December 1, 2021 response to appellant's first set of interrogatories and requests for production of documents.[7] Bringardner objected to many of the 24 interrogatories and 26 requests for production of documents on grounds they were overly broad, vague, ambiguous, or unduly burdensome, or, particularly with regard to requests about Carte's financial and real estate holdings, that they had no bearing on appellant's claims regarding Carte's legal capacity to execute the testamentary documents. The second exhibit was a copy of appellant's April 19, 2022 letter to Bringardner wherein appellant acknowledged the approaching April 29, 2022 discovery cut-off date, indicated he wished to schedule depositions and continue with discovery, and averred that if the parties could agree to move forward with discovery, court intervention would be unnecessary. The third

---

[6] Appellees averred that a complete copy of appellant's deposition was filed with the clerk of the probate court.
[7] There appears to be no dispute that Bringardner produced copies of the 2006, 2010, and 2011 testamentary documents in his December 1, 2021 response.

exhibit was a copy of a May 23, 2022 email from Bringardner to appellant asserting appellant's ongoing efforts to obtain discovery from Humphrey and others were improper because the discovery cut-off date had passed and he had never properly served Humphrey with a subpoena; he also noted that appellant had failed to make discovery requests for medical records from those who might have possession of such records. Bringardner averred that because appellant had ample time to conduct discovery, he would oppose further attempts to compel improperly (or never) sought discovery and any attempts to extend the discovery deadline. Bringardner offered, however, to execute a waiver for Carte's healthcare records as long as the waiver was directed at a specific physician or medical practice and the request sought information relevant to appellant's claims, and to execute a waiver of confidentiality for Humphrey's 2006-2010 estate planning documents. Bringardner advised that the offer was made notwithstanding that the parties were weeks beyond the discovery cut-off date and with reservation of all rights to object to any motion to extend the discovery deadline.

{¶ 20} On June 21, 2021, appellant filed a reply brief in support of his motion to compel. Therein, appellant asserted that on May 16, 2022, the day before appellant's May 17, 2022 deposition, he emailed all opposing counsel expressing his concern that the ongoing discovery dispute would likely result in protracted depositions involving numerous objections which would require trial court involvement. He further asserted that after he raised the same issue during appellant's May 17, 2022 deposition, Bringardner averred (after the deposition was completed) that he would oppose all attempts to compel improperly sought discovery and all attempts to extend the discovery deadline. Accordingly, appellant determined that it would be futile to conduct his previously scheduled depositions of Bringardner and Osborne.[8] He then filed the motion to compel two weeks later, on May 31, 2022.

{¶ 21} Appellant attached three exhibits to his reply brief. The first was a copy of his pre-deposition May 16, 2022 email to opposing counsel. In it, appellant indicated that he would likely obtain guidance from the trial court regarding the discovery dispute in order

---

[8] On May 16, 2022, appellant filed notices of deposition for Osborne and Bringardner, to be conducted May 18 and June 2, 2022, respectively. The record on appeal does not include any discussion between counsel during or after appellant's May 17, 2022 deposition related to appellant's decision to cancel the scheduled depositions of Osborne and Bringardner.

to streamline the deposition process. The second was a copy of Bringardner's responses to appellant's first set of interrogatories and request for production of documents. The third was a copy of Bringardner's April 29, 2022 letter to appellant.

{¶ 22} On June 30, 2022, appellant filed a Civ.R. 56(F) motion seeking an extension of time to complete discovery prior to filing a response to the motions for summary judgment. Appellant reiterated and incorporated the arguments set forth in his motion to compel regarding his difficulty in obtaining discovery from Bringardner relevant to his claims. In addition, appellant argued that the estate documents executed by Carte in 2010 and 2011 did not preclude him from having standing to pursue his case. Appellant maintained that if the 2012 will was invalidated, the 2011 will would control, and because it was a pour-over will putting all estate assets into the 2006 trust under which appellant was a beneficiary, he had standing to contest the 2012 will. Appellant further maintained that the 2010 and 2011 estate planning documents suggested that Osborne was actively involved in their creation, serving as evidence supporting his claim of Osborne's undue influence over Carte in executing the 2012 will.

{¶ 23} Appellant requested the court grant his Civ.R. 56(F) motion and stay rulings on the two pending motions for summary judgment until he received from Bringardner supplemental responses to his discovery requests and signed authorizations permitting him to obtain Humphrey's estate planning files and Carte's financial and medical records from third parties, and thereafter deposed pertinent parties and witnesses. Appellant attached to his motion the affidavit of his counsel, Braden Blumenstiel, his own affidavit, and the 2006, 2010, 2011, and 2012 testamentary documents.

{¶ 24} In his affidavit, Blumenstiel averred that prior to filing the complaint, he attempted to obtain estate planning documentation from both Humphrey and Bringardner. When those efforts were unsuccessful, he was forced to file the complaint. Subsequent to filing suit, he attempted to obtain estate planning documents from Humphrey, who informed him that he would not provide the documents without authorization from Bringardner. Bringardner refused to sign authorizations for Carte's prior estate planning documents, medical records, and financial records. Bringardner also initially refused to respond to appellant's discovery requests, filed partial responses to those discovery requests five months after being served, and, upon appellant's request for supplemental responses, filed only partial responses. At that point, Blumenstiel filed a motion to compel

Bringardner to supplement the responses to appellant's discovery requests and to sign authorizations related to Carte's estate planning documents, medical records, and financial records. Blumenstiel incorporated the arguments and factual allegations set forth in the motion to compel into the Civ.R. 56(F) motion. According to Blumenstiel, Bringardner's refusal to provide the requested discovery and sign the requested authorizations prejudiced appellant because those documents were required to properly investigate appellant's claims, take depositions of pertinent witnesses, and fully respond to the pending motions for summary judgment. Blumenstiel anticipated completion of necessary discovery within the next six months if Bringardner was accommodating or if he was replaced by a more cooperative executor.

{¶ 25} In his affidavit, appellant averred that Bringardner had prevented him from obtaining estate planning documents executed by Carte between 2010 and 2012, and that Bringardner's actions precluded him from accessing evidence relevant to his claims. Appellant also averred that following Carte's wife's death in 2009, Carte became extremely dependent upon Osborne, prompting concerns by appellant and his family that Osborne was taking advantage of Carte. Appellant further stated that in his numerous interactions with Osborne over the years, he had observed and become familiar with her handwriting, and that her handwriting appeared on the testamentary documents executed by Carte in 2010. He also asserted that Osborne's sister worked in Bringardner's office at the time he drafted the 2011 and 2012 wills and trusts for Carte. Appellant also stated that Carte's execution of the first codicil to his will on January 13, 2010, only 27 days after his wife's death, was out of character for Carte, and that the multiple alterations to his estate plans over a short period of time were inconsistent with the way Carte operated throughout his lifetime. Appellant also averred that Carte would not have intentionally or voluntarily disinherited Jean or him.

{¶ 26} On July 5, 2022, Bringardner filed a memorandum in opposition to appellant's Civ.R. 56(F) motion, supported by his own affidavit with corresponding attachments. In his affidavit, Bringardner averred that he served as Carte's attorney from late 2010 until his death in 2020. In 2011, Carte updated his HIPAA release information, healthcare power of attorney, living will, and funeral representative appointment; none of the updates named appellant or Jean in any capacity, and to the extent they were previously

named in such capacities, Carte sought to remove all of their authority with respect to such positions.

{¶ 27} In the body of his memorandum in opposition, Bringardner first challenged appellant's contention that he was uncooperative in appellant's pre-litigation investigation and that such failure resulted in appellant being forced to file his lawsuit. Specifically, Bringardner noted that appellant's deadline to contest the 2012 will was limited by R.C. 2107.76, which provides that an action to contest the validity of a will must be commenced no later than three months after the initial filing of the notice of admission of the will to probate. Bringardner noted that the notice of admission was filed November 12, 2020, making the three-month deadline to contest the will February 12, 2021. Bringardner further averred that the first time appellant contacted him was via an email dated February 10, 2021, only two days prior to the February 12, 2021 deadline set by R.C. 2107.76. According to Bringardner, appellant attached to that email a demand letter dated February 10, 2021, a copy of Carte's 2012 will and 2012 trust, and affidavits from appellant and individuals named Karen Pfeiffer and Linda Bevan suggesting that Carte was suffering from dementia and was thus susceptible to undue influence exerted by Osborne to alter his estate plans after Virgina's passing. In the letter, appellant demanded executed affidavits from all co-executors that were to include complete financial accountings for the prior three years; executed authorizations by at least one co-executor to obtain financial documents and information from financial institutions, and to permit Humphrey to share documentation associated with legal work he performed for the Cartes; compensation of 20 percent of all probate and non-probate assets of Carte at the time of his death, and a waiver of all statutes of limitations "associated with contesting a will, the trust, inter vivos transfers, breach of fiduciary duty, and/or other related claims." (Memo in Opp. at 2, Ex. 1, Aff. at ¶ 12, Ex. A.) Bringardner responded to the email on February 11, 2021; during a telephone conversation later that day, Bringardner advised appellant that Carte eliminated him and Jean from inheritance multiple times over multiple documents prior to and including the 2012 will and 2012 trust and that Carte was competent when executing his 2012 will and 2012 trust. Bringardner further asserted that because appellant was not entitled to any inheritance from Carte's estate, Bringardner was without authority to accede to the demands set forth in the letter.

{¶ 28} Bringardner also challenged appellant's assertions that he improperly refused to provide requested discovery. He maintained that he initially refused to provide the requested discovery during the pendency of the motion to dismiss, which was premised on appellant's lack of standing; however, once the trial court denied the motion, he provided appropriate and relevant discovery responses. Bringardner noted that appellant took no issue with Bringardner's discovery responses in the almost five months following service and never moved to compel further response. He further argued that despite appellant's claims that he needed Carte's prior estate planning documents from Humphrey and Bringardner and Carte's medical and financial records, he did not explain why he did not pursue them during the open discovery period and waited until well after the discovery deadline had passed to file the motion to compel.

{¶ 29} Bringardner further argued that appellant did not provide sufficient reason why he could not present facts essential to justify his opposition to the motions for summary judgment. He maintained that appellant had not shown a particularized factual basis to indicate why further discovery was needed to respond to the legal issues presented in the motions for summary judgment or how further discovery would aid the trial court in resolving those legal issues. Bringardner averred that appellant did not provide a detailed explanation of what he hoped to discover in the estate planning documents, financial records or medical records or how that information would aid him in opposing the arguments made in the pending summary judgment motions.

{¶ 30} On July 6, 2022, Osborne filed a memorandum in opposition to appellant's Civ.R 56(F) motion. Osborne maintained that appellant's failure to obtain discovery was due to his own dilatory conduct in failing to bring the alleged discovery issues before the trial court in a timely manner. Specifically, Osborne averred that appellant did not timely and properly follow up on Bringardner's allegedly insufficient discovery responses, did not properly serve Humphrey with subpoenas for Carte's estate planning files, did not attempt to depose Humphrey, did not issue subpoenas to Carte's medical providers, did not contact the trial court for an informal discovery conference, did not depose Osborne or Bringardner, and did not move to compel discovery until over one month after the discovery deadline had passed.

{¶ 31} Osborne also argued that the discovery dispute between appellant and Bringardner was a red herring because all of Carte's testamentary documents were properly

before the court and conclusively established that appellant lacked standing to contest the 2012 will and 2012 trust. Osborne challenged appellant's contention that if the 2012 will was found to be invalid, the 2011 will depositing all estate assets into the 2006 trust, of which appellant was a beneficiary, would control. Osborne noted that the 2011 will expressly revoked all former wills and the 2011 trust expressly amended and restated all former trusts; accordingly, even if appellant was a beneficiary under the 2006 will and 2006 trust, both had been revoked.

{¶ 32} On July 12 and 14, 2022, respectively, appellant filed replies to the opposition memoranda filed by Bringardner and Osborne. In them, appellant reiterated his position that the estate planning documents Humphrey prepared for Carte and Carte's medical records and financial records were integral to his ability to appropriately respond to the motions for summary judgment and that Bringardner prevented him from obtaining those documents. Appellant also responded to the arguments presented in the opposition memoranda, including the contentions that appellant had failed to explain what evidence he hoped to obtain through additional discovery. To that end, appellant asserted that he intended to investigate the circumstances under which the testamentary documents executed in 2006, 2010, 2011, and 2012 were created. Specifically, he averred that production of the complete estate planning files of Humphrey and Bringardner, including phone records, billing statements, notes made during estate planning meetings, correspondence, and "a wide variety of other evidence" would aid him in determining who was involved in the creation of the documents and the roles individuals played during the drafting and execution of the documents. (Reply Brief at 14.) Appellant claimed that production of these files was particularly important because he believed that Osborne handwrote notes on at least some of the documents. Appellant further asserted that Carte's medical records would provide a more detailed explanation of the state of Carte's physical and cognitive health when the 2010, 2011, and 2012 testamentary documents were executed. Appellant alleged that such records were necessary for him to prove his claims of lack of testamentary capacity and/or susceptibility to undue influence by Osborne. Regarding Carte's financial records, appellant asserted that those documents would include such things as beneficiary designation forms needed to investigate if and when beneficiary designations associated with Carte's financial assets were changed and who was involved in having them changed. Appellant also claimed that the documents would provide

information regarding whether any of the parties had access to and/or wrongfully took any of Carte's financial assets. Appellant asserted such information was relevant to his claim of improper inter vivos transfers.

{¶ 33} On November 30, 2022, the trial court filed an entry denying both appellant's motion to compel and his Civ.R. 56(F) motion. The court concluded that the motion to compel was untimely, having been filed nearly one month after the discovery deadline had passed. The court found that appellant had presented no persuasive justification for failing to involve the court during the open discovery period. The court also found that even if appellant believed he would be able to persuade Bringardner to provide authorizations and satisfactory discovery responses sometime after the April 29, 2022 discovery deadline, it would have been appropriate for appellant to request an extension of the deadline before it passed if he wished to maintain the possibility of obtaining recourse under Civ.R. 37 in the event it became necessary.

{¶ 34} The trial court denied the Civ.R. 56(F) motion on essentially the same basis, i.e., that the discovery deadline had passed and that appellant had made no timely effort to request court involvement in resolving the discovery issues. Accordingly, the court found that appellant had failed to set forth sufficient reasons warranting an extension of time to conduct discovery.

{¶ 35} In an entry filed December 1, 2022, the trial court granted the two pending motions for summary judgment with respect to the will contest and dismissed the other claims raised in appellant's complaint without prejudice.

{¶ 36} In its analysis, the court first set forth the procedural history of the case, particularly noting that the parties' discovery dispute culminated in the trial court denying appellant's discovery-related motions as untimely and that appellant had not filed memoranda contra the motions for summary judgment.

{¶ 37} The court next addressed the causes of action raised in appellant's complaint other than the will contest, i.e., that the 2012 trust and certain inter vivos transfers be declared invalid. Citing Loc.R. 78.1(L) of the Franklin County Court of Common Pleas, Probate Division and *Hess v. Sommers*, 4 Ohio App.3d 281 (3d Dist.1982), the court emphasized that a will contest under R.C. 2107.71 is a special statutory proceeding, distinct from other kinds of civil actions, which the court's local rule requires to be filed separately

from any other causes of action.[9] Accordingly, the court dismissed without prejudice all causes of action set forth in the complaint other than the will contest.

{¶ 38} Regarding the will contest, the trial court concluded appellant lacked standing to challenge the validity of the 2012 will as a matter of law, as he was not a person "interested in a will or codicil admitted to probate" under R.C. 2107.71. The court found appellant was not interested in the 2012 will because he did not have a direct pecuniary interest in Carte's estate, as he would not inherit from the estate at intestacy and was not a beneficiary under a former will that was revoked by the 2012 will.

{¶ 39} The court's conclusion was based on its review of the intervening testamentary documents executed by Carte in 2006, 2010, 2011, and 2012. To that end, the court noted that the 2006 will left a specific bequest to appellant and the residuary estate to the trustee of the 2006 trust; in the trust, appellant was left a specific gift as well as a share of the residual trust property. The first codicil and first amended trust executed in January 2010 deleted the provisions leaving specific and residual bequests to appellant and contained no new provisions naming appellant as a beneficiary. Likewise, the second codicil and second amended trust executed in June 2010 included no provisions for appellant as beneficiary. The 2011 will revoked all former wills and codicils and left all property to the trustee of the 2006 trust as amended or restated; the 2011 trust amendment indicated that it amended and restated the 2006 trust and all amendments thereto. Neither the will nor the trust agreement included any provision for appellant. The 2012 will at issue in the present case revoked all former wills and codicils and left all property to the trustee of the 2006 trust as amended or restated; the 2012 trust amendment indicated that it amended and restated the 2006 trust and all amendments thereto. Again, neither the will nor trust agreement contained any provision for appellant.

{¶ 40} While acknowledging appellant's suspicions about the circumstances under which the 2010, 2011, and 2012 documents were created, the court found that no genuine issue of material fact existed as to the facial validity of any of those documents, as they were all subscribed by Carte and notarized or witnessed in accordance with the requisite

---

[9] Loc.R. 78.1(L) provides in part that "[a]ll special statutory proceedings, including but not limited to actions filed pursuant to 2107.71 (will contests) * * * shall be filed separately and with no other causes of action accompanying the pleading." *Hess* holds that "[a] will contest * * * raises the single and ultimate issue whether the writing produced is the last will or codicil of the testator." *Id.* at paragraph one of the syllabus.

statutory formalities. The court found that while appellant could have expected a share of the probate estate if the 2006 will and trust provisions remained in effect, both of those documents had been validly superseded multiple times since 2010 and would not be reinstated even if the 2012 will were invalidated. The court further found that setting aside the 2012 will would reinstate the 2011 will, which made no direct provision for appellant and funneled all assets into the trust. The court further stated that "[i]nvalidating the 2012 will would not automatically invalidate the 2012 trust amendment and restatement, however—the restatement is an independent document that would remain in effect unless successfully contested in a separate action by someone with proper standing. Thus, following the terms of the 2011 [trust] would have the same effect as following the terms of the 2012 will, at least with respect to the issue at hand; in either event, the entire proceeds of [Carte's] probate estate are to be poured into a trust whose terms make no provision for [appellant]." (Dec. 1, 2022 Entry at 7.) The court concluded that since appellant would not inherit regardless of whether the 2011 will was set aside, he lacked a pecuniary interest in Carte's estate that would grant him standing to contest the 2012 will as a matter of law. Accordingly, the court granted the pending summary judgment motions and dismissed the will contest action.

## II. Assignments of Error

{¶ 41} Appellant timely appeals from the trial court's December 1, 2022 judgment[10] and assigns the following two assignments of error for our review:

> [I]. The Trial Court Erred in Ruling Plaintiff-Appellant Lacked Standing to Contest the Will of Decedent James Carte.
>
> [II]. The Trial Court Erred in Denying Plaintiff-Appellant's Civ.R. 56(F) Motion for Extension.

## III. Analysis

{¶ 42} To facilitate our analysis, we first consider appellant's second assignment of error. In it, appellant asserts the trial court abused its discretion by denying his Civ.R.

---

[10] The trial court's November 30, 2022 entry denying the Civ.R. 56(F) motion is an interlocutory order related to the December 1, 2022 judgment granting summary judgment to Bringardner, Gate, and Osborne. Consequently, the entry denying the Civ.R. 56(F) motion merged into the final judgment which disposed of the claims asserted against them. *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, ¶ 20 (10th Dist.) Because interlocutory orders merge with a court's final judgment, appellant was not required to separately identify the entry denying his Civ.R. 56(F) motion in the notice of appeal. *Childs v. Kroger Co.*, 10th Dist. No. 22AP-524, 2023-Ohio-2034, ¶ 36.

56(F) motion for an extension of time to obtain additional discovery prior to responding to the motions for summary judgment. Although appellant does not specifically assign error to the trial court's denial of his motion to compel, we note that he expressly reiterated and incorporated the arguments set forth in his motion to compel in his Civ.R. 56(F) motion for extension.

{¶ 43} Civ.R. 56(F) provides that "[s]hould it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." Civ.R. 56(F) thus provides the remedy for a party seeking a continuance to conduct discovery relevant to a motion for summary judgment. *Jacobs v. Jones*, 10th Dist. No. 10AP-930, 2011-Ohio-3313, ¶ 58, citing *Hahn v. Groveport*, 10th Dist. No. 07AP-27, 2007-Ohio-5559, ¶ 30, citing *Gates Mills Invest. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 168 (8thDist.1978).

{¶ 44} Civ.R. 56(F) expressly requires the party opposing the motion for summary judgment to submit affidavits with sufficient reasons stating why the party cannot present sufficient facts to justify its opposition. *Id.*, citing *Hahn*, citing *Gates Mills* at 169. "The party requesting a Civ.R. 56(F) continuance bears the burden of establishing why such party cannot present sufficient facts to justify its opposition without a continuance." *Singleton v. Ohio Concrete Resurfacing, Inc.*, 10th Dist. No. 06AP-991, 2007-Ohio-2012, ¶ 21, citing *Carolina Tobacco Co. v. Petro*, 10th Dist. No. 04AP-1125, 2006-Ohio-1205, ¶ 39.

{¶ 45} " 'The court's discretion in granting continuances pursuant to Civ.R. 56(F) should be exercised liberally in favor of the nonmoving party who has requested a reasonable interval for the production of necessary rebuttal material.' " *Whiteside v. Conroy*, 10th Dist. No. 05AP-123, 2005-Ohio-5098, ¶ 37, quoting *Carrier v. Weisheimer Cos., Inc.*, 10th Dist. No. 95APE04-488 (Feb. 22, 1996), citing *Whiteleather v. Yosowitz*, 10 Ohio App.3d 272 (8th Dist.1983). "Ultimately, however, ' "the provisions of Civ.R. 56(F) are all discretionary. They are not mandatory." ' " *Id.*, quoting *Martinez v. Yoho's Fast Food Equip.*, 10th Dist. No. 02AP-79, 2002-Ohio-6756, ¶ 14, quoting *Carlton v. Davisson*, 104 Ohio App.3d 636, 648 (6th Dist.1995). Thus, "[a]n appellate court will not reverse a trial court's denial of a Civ.R. 56(F) motion absent an abuse of discretion." *Singleton* at

¶ 21, citing *Carolina Tobacco.* An abuse of discretion implies an "unreasonable, arbitrary or unconscionable" decision. *Walter v. ADT Security Sys., Inc.*, 10th Dist. No. 06AP-115, 2007-Ohio-3324, ¶ 39, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 46} Appellant's motion to compel and his Civ.R. 56(F) motion both were filed after the discovery cut-off date of April 29, 2022. We first note that under Loc.R. 78.2(B) of the Franklin County Court of Common Pleas, Probate Division "[a]bsent extraordinary circumstances, the discovery cut-off date included in the case management schedule shall be the last day for any party to seek the involvement of the court in the discovery process, by way of motion seeking a ruling, order, sanction, or other court action. Voluntary, mutually agreed-upon discovery, including depositions, may continue after the discovery cut-off date in a manner that does not delay any other event on the case schedule." Thus, absent extraordinary circumstances (which appellant does not assert exist here) the discovery cut-off date of April 29, 2022 was the last date appellant could seek court involvement in the discovery process. As noted above, appellant filed both his motion to compel and Civ.R. 56(F) motion well after the discovery cut-off date.

{¶ 47} Moreover, this court and others have held that a trial court does not abuse its discretion in denying a motion to compel and/or a Civ.R. 56(F) motion where a party lacks diligence in conducting discovery and/or does not seek court involvement until after the discovery cut-off date. In *Steele v. Mara Ents.*, 10th Dist. No. 09AP-102, 2009-Ohio-5716, the appellee responded to the appellant's first discovery requests, offering answers to interrogatories, documents, and some objections. *Id.* at ¶ 32. Nearly seven months later, the appellant informed the appellee of perceived deficiencies in its discovery response. *Id.* The appellee responded with supplemental answers, reiterated certain objections and requested clarification on certain requests. *Id.* Approximately one month later, the appellee served the appellant with a second set of documents in response to the appellant's second request for production. *Id.* One day after the extended discovery cut-off date, the appellant filed a motion to compel discovery, informing the trial court for the first time of what he believed to be the appellee's insufficient cooperation in discovery. *Id.* at ¶ 33. This court found no abuse of discretion in the trial court's denial of the appellant's motion to compel on two grounds: (1) that he was not diligent in following up on his discovery requests, and (2) that the motion to compel was untimely, having been filed after the discovery cut-off date. *Id.*

{¶ 48} In *Singleton*, the appellant's claims had been pending for almost three years when the appellee moved for summary judgment, during which time the court twice extended the discovery cut-off date. *Id*. at ¶ 23. Despite the appellee's stated intention to move for summary judgment, the appellant made no attempt to depose witnesses before the dispositive motions deadline or the discovery cut-off date. *Id*. The appellant did not request an extension of the discovery cut-off date but, instead, waited until after the dispositive motions deadline, discovery cut-off date, and the appellee's filing of its motion for summary judgment before moving the trial court for any relief regarding discovery. *Id*. We found that the appellant's unexplained lack of diligence, not an uncooperative opposing party, hindered his ability to obtain discovery, and that such lack of diligence undercut his contention that the trial court abused its discretion in denying his Civ.R. 56(F) request. *Id*. In so finding, we cited to *Grenga v. Bank One, N.A.*, 7th Dist. No. 04 MA 94, 2005-Ohio-4474, where the court found no abuse of discretion in the denial of a Civ.R. 56(F) motion filed after the discovery cut-off date where the moving party did not request a change in the discovery cut-off date.

{¶ 49} In *State ex rel. Verhovec v. Northwood*, 6th Dist. No. WD-13-002, 2013-Ohio-5074, the appellant deposed the appellee's representative approximately three weeks prior to the discovery deadline. *Id*. at ¶ 12. One month after the discovery deadline, the appellant filed a Civ.R. 56(F) motion and a motion to compel discovery. *Id*. The court noted that in the month following the deposition, the appellant never indicated he had any problems with the deponent's responses. *Id*. The court further noted that the appellant could have filed a motion to compel or a motion for continuance of discovery prior to the discovery deadline if he felt the deponent's responses were inadequate or insufficient; he opted instead to file his discovery motions after the discovery deadline had passed. *Id*. The court considered the tardiness of the appellant's motions in concluding the trial court had not abused its discretion in denying them. The court reasoned that if the appellant believed the deponent was insufficient, he should have sought redress from the trial court prior to the discovery deadline. *Id*. at ¶ 14.

{¶ 50} The foregoing cases support our conclusion that the trial court did not abuse its discretion in denying appellant's Civ.R. 56(F) motion. As noted in our recitation of the factual and procedural history of this case, appellant served his first set of discovery requests on Bringardner on July 13, 2021. Bringardner immediately informed appellant

that he would not respond to the requests while his May 31, 2021 Civ.R. 12(B)(6) motion to dismiss remained pending.  The trial court denied the motion to dismiss on September 1, 2021, and on October 12, 2021, the magistrate imposed the April 29, 2022 discovery cut-off deadline and the June 1, 2022 dispositive motion deadline.  Bringardner responded to appellant's discovery requests on December 1, 2021. Approximately four and one-half months later, on April 19, 2022, appellant informed Bringardner of perceived deficiencies in his discovery responses.  Appellant noted the upcoming discovery deadline and indicated that as long as discovery progressed, he did not perceive a need to request from the court an extension of the discovery deadline.  Ten days later, on April 29, 2022, Bringardner sent appellant supplemental responses to the discovery requests.  On May 16, 2022, appellant emailed Bringardner indicating he would likely obtain guidance from the trial court as to the discovery dispute prior to appellant's deposition which was scheduled later that day.  Also on May 16, 2022, appellant scheduled depositions for Bringardner and Osborne; however, he cancelled them following appellant's deposition.  On May 23, 2022, Bringardner offered to execute a waiver for Carte's healthcare records conditioned upon the waiver being directed at a specific physician or medical practice and sought relevant evidence, and a waiver of confidentiality for Humphrey's 2006-2010 estate planning documents.   On May 31, 2022, over one month after the discovery cut-off date, and two weeks after he sat for deposition and cancelled the depositions of Osborne and Bringardner, appellant filed his motion to compel. He filed his Civ.R. 56(F) motion on June 30, 2022, two months after the discovery deadline and one month after the motions for summary judgment were filed.

{¶ 51} Appellant was aware of the April 29, 2022 discovery cut-off date since the scheduling order was imposed on October 12, 2021; indeed, he referenced the discovery deadline in his communications with Bringardner.  Appellant made no attempt to depose any witnesses before the discovery cut-off date, and he ultimately cancelled the depositions he had scheduled after the discovery cut-off date.  Further, appellant never requested an extension of the discovery cut-off date prior to filing his motion to compel and his Civ.R. 56(F) motion.  Although at various times appellant alluded to seeking court intervention in the discovery dispute, he waited until after the discovery cut-off date before moving the trial court for any relief regarding discovery.  Further, there is no indication in the record that appellant took advantage of Bringardner's May 23, 2022 offer to execute waivers for Carte's

healthcare records and Humphrey's estate planning documents. Given the ample time appellant had to conduct discovery, the fact that the discovery cut-off date elapsed prior to appellant filing his motion to compel and his Civ.R. 56(F) motion, and appellant's lack of diligence in pursuing discovery, we cannot find the trial court abused its discretion in denying appellant's Civ.R. 56(F) request for additional time to conduct discovery.

**{¶ 52}** Accordingly, the second assignment of error is overruled.

**{¶ 53}** In his first assignment of error, appellant contends the trial court erred in granting appellees' motions for summary judgment on grounds that he lacked standing to challenge Carte's 2012 will.

**{¶ 54}** We review a decision on a motion for summary judgment under a de novo standard. *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, ¶ 11. De novo appellate review means the court of appeals conducts an independent review, without deference to the trial court's decision. *Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 12. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

**{¶ 55}** Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot satisfy this initial burden by simply making conclusory allegations, but instead must demonstrate, including by use of affidavit or other evidence allowed by Civ.R. 56(C), that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wiltshire Capital* at ¶ 13. If the moving party fails to satisfy this initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies the initial burden, the non-moving party has the burden to respond, by affidavit or otherwise

as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Dresher* at 293; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

**{¶ 56}** "Standing relates to a party's right to make a legal claim or seek judicial enforcement of a legal duty or right." *Albanese v. Batman*, 148 Ohio St.3d 85, 2016-Ohio-5814, ¶ 24, citing *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27, citing *Black's Law Dictionary*, 1442 (8th Ed.2004). In an action contesting the validity of a will, R.C. 2107.71(A)[11] requires that the party challenging the will be a "person interested" in the will. For purposes of a will contest, a "person interested" is " '[a]ny person who has such a direct, immediate, and legally ascertainable pecuniary interest in the devolution of the testator's estate as would be impaired or defeated by the probate of the will, or be benefited by setting aside the will.' " *State ex rel. Abraitis v. Gallagher*, 143 Ohio St.3d 439, 2015-Ohio-2312, ¶ 16, quoting *Bloor v. Platt*, 78 Ohio St. 46, 49-50 (1908); *Wical v. Bernard*, 26 Ohio St.2d 55, 57 (1971) ("[a] person interested, within the meaning of the statute, is one who has a direct pecuniary interest in the estate of the putative testator that would be impaired or defeated if the instrument admitted to probate is a valid will").

**{¶ 57}** Here, it is undisputed that the 2012 will did not bequeath anything to appellant. Accordingly, appellant cannot claim to be a "person interested" in the 2012 will as a beneficiary thereunder. Nonetheless, appellant contends that because he was a beneficiary under the 2006 will, he has standing as a "person interested" to contest the validity of the 2012 will.

**{¶ 58}** It is undisputed that appellant was Carte's son-in-law and not a blood relative; therefore, he would not be entitled to inherit by intestate succession were the 2012 will to be found invalid. *See* R.C. 2105.06. When a party contesting a will who would not otherwise inherit by statute alleges he is a "person interested" under R.C. 2107.71(A), he must demonstrate that if the probated will is invalidated, he would have a direct pecuniary interest in the testator's estate by virtue of a prior will that has not been validly revoked.

---

[11] R.C. 2107.71(A) provides in part that "[a] person interested in a will * * * admitted to probate in the probate court * * * may contest its validity by filing a complaint in the probate court in the county in which the will * * * was admitted to probate."

*Cook v. Everhart*, 8th Dist. No. 107867, 2019-Ohio-3044, ¶ 12, citing *Barnhart v. Barnhart*, 4th Dist. No. 921 (Jan. 27, 1983).

{¶ 59} Under R.C. 2107.03, "[e]xcept oral wills, every will shall be in writing, but may be handwritten or typewritten. The will shall be signed at the end by the testator or by some other person in the testator's conscious presence and at the testator's express direction." Additionally, "[t]he will shall be attested and subscribed in the conscious presence of the testator, by two or more competent witnesses, who saw the testator subscribe, or heard the testator acknowledge the testator's signature."

{¶ 60} As noted by the trial court in its judgment entry granting the motions for summary judgment, the 2010 codicils and the 2011 will were all signed at the end by Carte and attested and subscribed by two competent witnesses in accordance with R.C. 2107.03. Appellant does not challenge this finding. Nor does appellant challenge the trial court's finding that he was not a named beneficiary in the 2010 codicils and the 2011 will, and that the 2011 will revoked all previous wills and codicils, including the 2006 will under which he was a named beneficiary. Rather, appellant maintains the trial court prematurely granted summary judgment on lack of standing grounds before he had the opportunity to conduct discovery related to the 2010 codicils and 2011 will and present evidence contesting their validity. On this point, appellant essentially reasserts the arguments set forth in his second assignment of error relating to his Civ.R. 56(F) motion. As we have determined that the trial court did not abuse its discretion in denying his Civ.R. 56(F) request for additional time to conduct discovery, appellant's argument lacks merit.

{¶ 61} Moreover, appellant's reliance on the *Barnhart* case is misplaced. There, Earl Barnhart executed a will in February 1974 leaving certain real property to his niece and nephews (collectively, "the Barnharts"). *Id.* In April 1974, Earl executed a codicil to the will which revoked his bequest to the Barnharts and left the real property to his future wife, Jean for certain trust purposes. *Id.* In August 1975, Earl executed another will revoking all other wills and making no bequest to the Barnharts. *Id.* In 1977, Earl married Jean. *Id.* In May 1978, Earl executed a will providing that after certain legacies, Jean would inherit Earl's real and personal property. *Id.* Following Earl's death, his May 1978 will was admitted to probate. *Id.*

{¶ 62} The Barnharts filed suit against Jean contesting the 1978 will on grounds it was the product of undue influence and that Earl did not have the requisite mental capacity

to make a will. *Id.* In her answer, Jean alleged that the Barnharts were not "persons interested" in Earl's will as required by R.C. 2107.71. *Id.* She later filed a motion for summary judgment arguing the Barnharts failed to plead a pecuniary interest in Earl's estate and relied on a deposition of one of the Barnharts as purporting to show no prior executed will in which the Barnharts were beneficiaries was known to the Barnharts. *Id.* The Barnharts filed a memorandum contra which included an affidavit from one of the Barnharts to which a copy of the 1974 will was attached. *Id.* The trial court entered an order deeming the matter submitted but allowed Jean to file a reply to the Barnharts' memorandum contra. *Id.* In her reply, Jean argued for the first time that the February 1974 bequest to the Barnharts was revoked by the April 1974 codicil and August 1975 will; she attached both those documents to her reply brief via an affidavit from her attorney. *Id.* The trial court then granted Jean's motion for summary judgment. *Id.*

{¶ 63} The court of appeals reversed, finding the Barnharts were not afforded a reasonable opportunity to contest the validity of the April 1974 codicil and August 1975 will which were submitted for the first time in Jean's reply brief. *Id.* The court concluded that the trial court "erred by prematurely granting summary judgment without an opportunity being afforded to [the Barnharts] to oppose the new and distinct reason belatedly advanced in support of the [summary judgment] motion." *Id.*

{¶ 64} The instant case is factually and procedurally distinguishable from *Barnhart*. There, Jean essentially ambushed the Barnharts by asserting the revocation argument and attaching the intervening estate documents for the first time in her reply brief and after the motion for summary judgment was already under advisement. Here, the standing argument based on the revocation of the 2006 will was asserted in the motions for summary judgment and the 2010 and 2011 estate documents were submitted with those motions. Thus, in contrast to *Barnhart*, the summary judgment movants did not present a "new and distinct reason belatedly advanced in support of the [summary judgment] motion."

{¶ 65} Moreover, as discussed in our resolution of the second assignment of error, appellant was aware of the standing issue and had at least one of the intervening estate documents under which he was not a beneficiary (the 2011 will) no later than May 28, 2021 when Bringardner and Gate filed their Civ.R. 12(B)(6) motion to dismiss. Appellant had 11 months from that point in time until the April 29, 2022 discovery cut-off to conduct discovery in an attempt to invalidate that will. Further, appellant received the other

intervening estate documents under which he was not a named beneficiary no later than December 1, 2021 when Bringardner produced them in discovery. He had 5 months from that point in time until the discovery cut-off to conduct discovery in an attempt to invalidate those documents.

{¶ 66} Further, *Barnhart* actually supports the rule of law relied upon the trial court in the instant case. The court stated, "[w]hen a contestant, who would not otherwise inherit by statute, seeks to bring himself within the status of an interested party by reason of a prior will, it is necessary that his interest be such that if the probated will is invalidated that he would then have an interest by reason of the earlier will. This necessarily presupposes that the prior will under which he claims has not been validly revoked and this is the general rule." *Id.* Applying that rule to the facts of the case, the court averred "[i]t necessarily follows that if either the codicil of April 11, 1974 to the 1974 will revoking the devisee to appellants or the 1975 will in which [the Barnharts] were neither legatees or devisees and which revoked all prior wills were valid, summary judgment was properly entered below." *Id.*

{¶ 67} In the present case, because the 2011 will made no bequest to appellant, and because it validly revoked all former wills, including the 2006 will under which appellant was a beneficiary, appellant cannot demonstrate that if the 2012 will were invalidated, he would have a pecuniary interest in Carte's estate by virtue of a prior will that has not been validly revoked. Accordingly, appellant cannot demonstrate that he is a "person interested" in the 2012 will pursuant to R.C. 2107.71(A). Because appellant is not a "person interested" pursuant to R.C. 2107.71(A), he has no standing to challenge the 2012 will. Accordingly, the trial court did not err in granting the motions for summary judgment filed by Osborne, Bringardner, and Gate and dismissing appellant's complaint.

{¶ 68} Appellant's second assignment of error is overruled.

## IV. Conclusion

{¶ 69} Having overruled appellant's two assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

BOGGS, J., concurs.
JAMISON, J., dissents.

JAMISON, J., dissenting.

{¶ 70} I would find that standing is a threshold question that should have been answered prior to deciding whether the trial court abused its discretion in denying appellant's Civ. R. 56(F) motion. I would find that appellant had standing to challenge not only the 2012 will and amended trust, but as appellee conceded in oral argument, appellant would be able to challenge the unprobated 2010 codicils and amended trusts, and the 2011 will and amended trust, if the 2012 will and amended trust were found invalid. Because only a jury can decide the validity of a will, I would remand on the issue of standing and find that discovery should be exchanged, and allow the issue of the validity of the estate documents to be determined. Therefore, I respectfully dissent.

{¶ 71} The initial question is whether Dan Miller lacked standing to contest the 2012 will of James Carte. Miller was a beneficiary under Carte's 2006 will and trust, but Carte did not name him a beneficiary under the January 2010 codicil and amended trust, the June 2010 second codicil and second amended trust, the 2011 will and amended trust, or the 2012 will and amended trust.

{¶ 72} A "person interested" in a will admitted to probate may contest the validity of that will. R.C. 2107.71(A). Generally, "[a] 'person interested' for purposes of a will contest is '[a]ny person who has such a direct, immediate, and legally ascertained pecuniary interest in the devolution of the testator's estate as would be impaired or defeated by the probate of the will, or be benefited by setting aside the will.' " *State ex. rel. Abraitis v. Gallagher*, 143 Ohio St.3d 439, 2015-Ohio-2312, ¶ 16, quoting *Bloor v. Platt*, 78 Ohio St. 46, 49 (1908). In holding more specifically applicable to our case, the Supreme Court of Ohio stated that "[a] person who is a beneficiary under a will has such a pecuniary interest in the estate of the testator as entitles him * * * to contest another alleged will of the same testator which would destroy, reduce or impair his share in such estate." *Kennedy v. Walcutt*, 118 Ohio St. 442 (1928), *overruled on other grounds*, *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 64 (1991), fn. 9.

{¶ 73} If he established a prima facie case as to the invalidity of the 2010 codicils and trust amendments and the 2011 will and trust amendment, Miller could have standing to challenge the 2012 will. If the 2010 and 2011 estate documents were invalid, then the 2006 will and trust would be the operative estate documents, thus giving Miller a direct pecuniary interest that would be benefitted by the setting aside of the 2012 will. Challenging

the 2010 and 2011 estate documents, however, requires evidence of undue influence or incompetence which requires consideration of Miller's Civ.R. 56(F) motion. When the lower court denied Miller's motion, the court made a preliminary determination that effectively renders the 2012 will and trust valid. "In this respect the court invaded the province of the jury, which alone has the authority to decide the ultimate issue of validity." *Bazo v. Siegel*, 58 Ohio St.2d 353, 354 (1979).

{¶ 74} In *Krischbaum*, the court held that the statutory presumption of validity, being rebuttable, shifts the burden of persuasion upon the contestants in an action to contest a will that has been admitted to probate. "A presumption arises from the order of admission of the will to probate that the testator was free from restraint. The burden of proving undue influence is upon the contestants. *West v. Henry* (1962), 173 Ohio St. 498, 502, 20 O.O.2d 119, 121, 184 N.E.2d 200, 203; *Kata v. Second Natl. Bank* (1971), 26 Ohio St.2d 210, 55 O.O.2d 458, 271 N.E.2d 292; *Kennedy v. Walcutt* (1928), 118 Ohio St. 442, 161 N.E. 336; *Hall v. Hall* (1908), 78 Ohio St. 415, 85 N.E. 1125." *Krischbaum* at 64.

{¶ 75} Further, I would order appellees to exchange discovery as appellant was the beneficiary under a prior unprobated will. *Krischbaum* shifts the burden of persuasion upon contestants and the lack of discovery has hamstrung appellant. Since the inception of this case, appellee Bringardner has obstructed the exchange of discovery. Pursuant to Civ.R. 26(B)(3)(a):

> *Without awaiting a discovery request*, a party must provide to the other parties, except as exempted by Civ.R. 26(B)(3)(b) or as otherwise stipulated, or ordered by the court:
>
> (i) The name and, if known, the address, telephone number, and e-mail address of each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; [and]
>
> (ii) A copy - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]

(Emphasis added.) Not only did appellee Bringardner ignore this rule, he also unilaterally refused to provide responses to appellant's discovery requests as required by Civ.R. 33 and

34. Appellee Bringardner admitted that he decided he was not going to comply with Civ.R. 33 and 34 because his motion to dismiss was pending when he received appellant's discovery requests. Notably, appellee Bringardner did not seek or receive a stay of discovery during the pendency of the motion to stay. A party does not get to choose when he will follow the rules.

{¶ 76} Appellee Bringardner finally provided some discovery responses after the trial court denied the motion to dismiss. This belated response led appellant to believe that appellee Bringardner would participate in discovery without court intervention and, therefore, appellant did not file a timely motion to compel. Appellant, however, was not successful in obtaining the discovery materials he needed to address necessary issues.

{¶ 77} Given the court's duty to consider the entirety of the circumstances resulting in the discovery failures that occurred in this case, the trial court should have held a hearing on appellant's motion to compel. Moreover, at the very least, the trial court should have granted a Civ.R. 56(F) continuance to allow that hearing to occur and determine the parameters of further discovery. The trial court prematurely granted summary judgment without giving appellant an opportunity to oppose the 2010 and 2011 estate documents to prove his standing to contest the 2012 will.

{¶ 78} Because the majority decision concludes otherwise, I respectfully dissent.

_____